**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WENDY KEW AND YVONNE KEW, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-2824 |
| | § | |
| BANK OF AMERICA, N.A., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a suit challenging an attempted mortgage foreclosure.  After receiving notice that their home would be sold at a substitute trustee's sale, the plaintiffs and mortgagors, Wendy Kew and Yvonne Kew, sued in state court to enjoin the foreclosure.  The state-court petition asserted five causes of action—fraud, negligent misrepresentation, breach of contract, breach of the duty of fair dealing, and violations of the Texas Property Code—and sued four groups of defendants — the original mortgagee (Bank of America, N.A.), the current mortgagee (U.S. Bank, N.A.), the mortgage servicer (BAC Home Loans Servicing, L.P. ("BAC")), and the substitute trustees (ReconTrust Company, Jeff Leva, Audrey Lewis, Sandy Dasigenis, and Pattie Sullivan).  The state court issued a temporary restraining order enjoining the foreclosure sale.  The defendants timely removed the lawsuit to federal court, then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry No. 10.)  The plaintiffs responded by arguing that the complaint sufficiently states viable causes of action and by moving to remand on the ground that the amount in controversy is less than $75,000.  (Docket Entry No. 15.)

Based on the pleadings; the motions and responses; the record; and the relevant law, this court denies the motion to remand and grants the motion to dismiss, with leave to amend.  The Kews may file an amended complaint no later than **May 18, 2012**.  The reasons for these rulings are explained below.

## I.    Background

The Kews own a home in Harris County, Texas.  When they purchased the home, they obtained a mortgage loan, signed a $600,000 promissory note, and executed a deed of trust granting a security interest in the property to the Bank of America.  U.S. Bank is now the mortgagee and BAC is the mortgage servicer.

In June 2011, the Kews received a letter and a foreclosure notice from ReconTrust, the company BAC had appointed to act as substitute trustee and sell the home at a foreclosure sale.  The letter stated that the Kews had defaulted on their mortgage loan; that the Kews had failed to cure the default after U.S. Bank sent them notice; that U.S. Bank had accelerated the mortgage debt; and that the amount due was $699,091.29.  The foreclosure notice stated that the "Substitute Trustee" would sell the home on July 5, 2011, at a public auction and designated ReconTrust, Leva, Lewis, Dasigenis, "or" Sullivan as "Substitute Trustee."

On July 1, 2011, the Kews sued in state court to enjoin the scheduled foreclosure sale.  The Kews alleged that they had been current on their mortgage payments until they applied for loan modification, at which point the defendants[1] instructed them "to stop making monthly payments" while the modification application was processed.  (Pet. ¶ 19.)  The Kews alleged that in reliance on the defendants' instructions, they stopped paying their mortgage and waited for the defendants

---

[1] The state-court petition did not distinguish among the various defendants.

to process the loan modification application.  The Kews allege that instead of the loan modification they expected, they received a notice informing them that their home would be sold at foreclosure on July 5, 2011 at 10:00 a.m.  (*Id.*)  Based on these allegations, the Kews asserted five causes of action: (1) fraud; (2) negligent misrepresentation; (3) violations of the Texas Property Code; (4) breach of the duty of good faith and fair dealing; and (5) breach of contract.  (*Id.* ¶¶ 20–23.)  The state-court petition did not seek damages but rather temporary and permanent injunctive relief from the foreclosure sale.

After the state court issued a temporary restraining order enjoining the foreclosure sale, the defendants removed to federal court and moved to dismiss under Rule 12(b)(6) for failure to state a claim.  The motion argues that the fraud and negligent misrepresentation claims are insufficiently pleaded; that the Texas Property Code claim fails as a matter of law because no foreclosure sale has occurred; that Texas law does not impose a duty of good faith and fair dealing in the mortgage context; and that the Kews failed to identify any contract duty that the defendants breached.  The Kews responded that "discovery is necessary to explore the causes of action . . . and to properly respond" to the motion to dismiss.  (Docket Entry No. 15, at 2.)  Without specifically addressing the defendants' arguments, the Kews generally argue that their state-court petition sufficiently alleged viable claims.  The Kews have also moved to remand, contending that there is no diversity jurisdiction because the amount in controversy is less than $75,000.  The parties' arguments are analyzed in detail below.

## II.     The Motion to Remand

A defendant has the right to remove a case to federal court when federal subject-matter jurisdiction exists and the removal procedure has been properly followed.  *See* 28 U.S.C. § 1441. The removing party bears the burden of establishing federal jurisdiction at the time of removal.

*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). If at any time after removal but "before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court. 28 U.S.C. § 1447(c).

In this case, federal subject-matter jurisdiction is based solely on diversity of citizenship. Diversity is present "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). The Supreme Court has "read the statutory formulation 'between . . . citizens of different States' to require complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). The Kews do not dispute that complete diversity exists between the parties.[2] Instead, they argue that this court lacks diversity jurisdiction because the amount in controversy is less than $75,000. They contend that the amount in controversy is $100, the value of the bond the state court required as security for issuing the temporary restraining order enjoining the foreclosure sale.

Courts "ordinarily consult the state court petition to determine the amount in controversy." *Manguno*, 276 F.3d at 723. When, as in this case, "the petition does not include a specific monetary demand, [the defendants] must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Id.* "This requirement is met if (1) it is apparent from the face of

---

[2] The Kews are diverse from the four financial-entity defendants: the Kews are Texas citizens; Bank of America and BAC are North Carolina citizens; U.S. Bank is a Minnesota citizen; and ReconTrust is a California citizen. The individual defendants, Leva, Lewis, Dasignis, and Sullivan reside in Texas, but their presence does not destroy diversity because they were improperly joined. "The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). To prove improper joinder, a defendant must show that there is no reasonable basis for predicting that the plaintiff might be able to recover against an in-state defendant in state court. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). The defendants have met their burden. The state-court petition did not allege that the plaintiffs had a contract with the substitute trustees or that the substitute trustees made any misrepresentations to them. The only possible claims against the substitute trustees are breach of the duty of good faith and fair dealing and violation of the Texas Property Code. Both claims fail as a matter of law. As explained in detail below, there is no reasonable basis to predict that the Kews might recover against the substitute trustees without a foreclosure sale, which has not occurred.

4

the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Id.* When the plaintiff seeks equitable or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). "[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 848 (5th Cir. 2009) (quoting *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547–48 (5th Cir. 1961)).

Contrary to the Kews' argument, the amount in controversy is not $100. The state court fixed a $100 bond as security for issuing the TRO that enjoined the foreclosure sale. But there is no basis to conclude that $100 is also the amount in controversy. An injunction bond is "to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order,"[3] not to assess the amount of controversy in a litigation. The Kews provide no legal support for their contention that for diversity jurisdiction purposes, the value of an injunction bond is the amount in controversy.

The case law makes clear that the value of the Kews' home, not that of the injunction bond, is the amount in controversy in this litigation. The Kews seek a permanent injunction preventing the defendants from "taking any action to foreclose, remove, evict, or deprive [their] peaceful enjoyment of their home." (Docket Entry No. 1-1, at 10.) If the Kews do not prevail in this litigation, their property will be sold at a non-judicial foreclosure sale and they will lose all of their rights to the property. Because the entire property is the object of the litigation, the value of the

---

[3] *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999).

property—which is greater than $75,000[4]—is the amount in controversy. *See Buttelman v. Wells Fargo Bank, N.A.*, No. 5:11–CV–00654–XR, 2011 WL 5155919, at *4 (W.D. Tex. Oct. 28, 2011) (holding that because the plaintiff sought to enjoin foreclosure of their property, the value of the property was the amount in controversy); *Govea v. JPMorgan Chase Bank, N.A.*, No. H–10–3482, 2010 WL 5140064, at *4 (S.D. Tex. Dec. 10, 2010) (holding that because "the 'object' of the [plaintiffs'] requests for injunctive relief [was] their property," the amount in controversy was the fair-market value of that property); *Berry v. Chase Home Fin., LLC*, No. C-09-116, 2009 WL 2868224, at *3 (S.D. Tex. Aug. 27, 2009) (holding that because "[a]bsent judicial relief, Plaintiff could be divested of all right, title, and interest to the Property," "the value of the declaratory and injunctive relief to Plaintiff" was "the current appraised fair market value of the Property"). The motion to remand is denied.

## III.    The Motion to Dismiss

### A.    The Legal Standard

---

[4] To establish that the value of the Kews' home exceeds $75,000, the defendants submitted two documents: (1) a copy of the deed of trust stating that the Kews signed a $600,000 promissory note in connection with the purchase of their home; and (2) a printout from the Harris County Appraisal District's website showing that the appraised fair-market value of the Kews' property as of January 1, 2011 is $844,013.  Without citing any legal authority, the Kews moved to strike these documents on the grounds that they are unauthenticated and would be inadmissible hearsay at trial. (Docket Entry No. 15, at 2.)  The motion to strike is denied.  After examining the documents, the court concludes that the defendants have produced sufficient evidence to support a finding that the documents are what the defendants purport them to be.  *See* FED. R. EVID. 901(a).  In addition, the documents are not hearsay.  The statement in the deed of trust identifying the amount of the mortgage loan is admissible under Federal Rule of Evidence 803(15) as a statement in documents that affect an interest in property.  The printout from the Harris County Appraisal District's website is a public record under Rule 803(8).  *See Govea*, 2010 WL 5140064, at *4 ("The court concludes that the 'Real Property Account Information' reported by the Harris County Appraisal District is an exception to hearsay under Rule 803(8) because it represents the outcome of a governmental process to collect information about the real property located within the county.").  Even if the documents were excluded, the court could still take judicial notice of the appraised fair-market value of the property.  Under Rule 201, a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).  Because the appraised fair-market value of the property is published on Harris County Appraisal District's website, the court may take judicial notice of it.  *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (holding that a district court may take judicial notice of information on an official government website); *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered not to be subject to reasonable dispute.  This includes public records and government documents available from reliable sources on the Internet." (internal citation omitted)).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The federal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of cause of action will not do." *Id*. (internal quotation marks and citation omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d

ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

### B.    The Discovery Request

The Kews' overarching argument against dismissal is that "[f]urther discovery is necessary to explore the causes of action . . . and to properly respond" to the motion to dismiss. (Docket Entry No. 15, at 2.)  One purpose of a Rule 12(b)(6) motion "is to test the sufficiency of the statement of a claim showing that plaintiff is entitled to relief, without forcing defendant[s] to be subjected to discovery."  *Sager v. Adamson*, No. C08-5463 FDB, 2008 WL 4181599, at *1 (W.D. Wash. Sept. 8, 2008).  The Supreme Court has explained that though "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678–79.  The Kews have neither stated a claim for relief that is plausible on its face nor shown that they need discovery to obtain information that is both solely in the defendants' possession and is essential to stating a plausible claim for relief.

The plausibility standard does not impose "a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556.  Instead, it "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiffs' claims.  *Id.*  For the reasons explained in detail below, the Kews have not stated plausible claims.  Nor have the Kews shown that they cannot state plausible claims without discovery.  To the contrary, the Kews have asserted claims—including breach of contract, fraud, and negligent misrepresentation—that are by their nature based on facts available to plaintiffs as well as defendants at the pleading stage.

8

C.      **The Breach of Contract Claim**

To state a claim for breach of contract under Texas law, a plaintiff must allege: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach.  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544–45 (5th Cir. 2003).  The "Breach of Contract" section of the state-court petition states, in its entirety, as follows: "Defendants have failed to process the loan modification as they have agreed to.  Defendants have also breached the terms of the promissory note, loan agreements and deeds of trust."  (Pet. ¶ 23.)   These bare-bone allegations are insufficient to state a plausible breach of contract claim.  Despite the allegation that the defendants "agreed to" process the loan modification application, the Kews have not sufficiently alleged that they entered into a binding contract requiring the defendants to do so.   Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.  *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012).  In the "Facts" section of the petition, the Kews alleged that the defendants "represented that they had received the loan modification package . . . and that the loan modification would be processed."  (Pet. ¶ 19.) These allegations do not support an inference that the defendants entered into a binding contract that required them to approve the loan modification application or to forgive or suspend indefinitely the mortgage payments that were identified in the notice of default.

Nor have the Kews stated a plausible breach of contract claim based on the allegation that the defendants "have also breached the terms of the promissory note, loan agreements and deeds of trust." (Pet. ¶ 23.)  That allegation is an unadorned, formulaic recitation of *some* of the elements of their cause of action.  But the Kews have not alleged *how* the defendants breached the promissory

note, loan agreements and deeds of trust.  The state-court petition lacks any factual allegations supporting the inference that the identified contracts were breached.

The motion to dismiss the breach of contract claim is granted, without prejudice and with leave to amend.

### D.      The Breach of the Duty of Good Faith and Fair Dealing Claim

"A claim for breach of duty of good faith and fair dealing is a tort action that arises from an underlying contract." *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o.j.).  The Texas Supreme Court "has declined to impose an implied duty of good faith and fair dealing in every contract, though it has recognized that such a duty may arise as a result of 'a special relationship between the parties governed or created by a contract.'" *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App.—Corpus Christi 2005, pet. denied) (citations omitted).  "Such 'special relationships' have been found to arise where contractual relationships are marked by shared trust or an imbalance of bargaining power." *Id.*  "However, absent a 'special relationship,' any duty to act in good faith is contractual in nature and its breach does not amount to an independent tort." *Id.*

The Kews alleged in a single sentence that the defendants "have breached their obligation to fairly deal" with them.  (Pet. ¶ 22.)  But the Kews' petition contains no factual allegations supporting the inference that a "special relationship" existed between them and the mortgagee defendants (Bank of America, U.S. Bank, and BAC).  Texas courts "have found no special relationship between a mortgagor and a mortgagee . . . that would impose an independent common law duty of good faith and fair dealing." *UMLIC VP*, 176 S.W.3d at 612.  The Kews have not alleged a viable tort claim against the mortgagee defendants based on a breach of the duty of good faith and fair dealing.

10

To the extent the Kews assert a breach of the duty of good faith and fair dealing claim against the substitute trustees, that claim fails as well.  "Although a trustee under a deed of trust owes neither a fiduciary duty nor a duty of good faith and fair dealing to the mortgagor, the trustee does have a duty to act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust."  *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011) (citations and internal quotation marks omitted).  That duty is breached "when the trustee fails to comply strictly with the terms of the deed of trust or the notice and sale provisions of § 51.002 of the Texas Property Code."  *Id.*  But "[b]reach of the trustee's duty under a deed of trust is not itself an independent tort."  *Id.*  "Instead, 'breach of this duty may be stated under Texas law *as a claim for wrongful foreclosure*,'" which "requires that the property in question be sold at a foreclosure sale."  *Id.* (quoting *Pou v. Brown & Shapiro*, No. 3:96–cv–3364–D, 1997 WL 102470, at *2 (N.D. Tex. Feb. 27, 1997)).  Because the Kews' property was not sold at a foreclosure sale, the Kews cannot assert a breach of the duty of good faith and fair dealing claim against the substitute trustees.

The motion to dismiss the breach of good faith and fair dealing claim is granted, with prejudice because amendment would be futile.

### E.    The Texas Property Code Claim

The Kews allege that the defendants violated § 51.002 of the Texas Property Code because they failed to give the notices that section requires.  Section 51.002 contains two notice provisions.  First, § 51.002(b) requires that notice of the foreclosure sale be given at least 21 days before the sale.  Second, § 51.002(d) requires that the debtor be informed that she is in default and given at least 20 days to cure the default before the 21-day notice is issued.  Because § 51.002 outlines the procedures for conducting a foreclosure sale, claims for violating its notice requirements are cognizable only

11

after a foreclosure.  Because the defendants have not foreclosed on the Kews' property, the statutory claim fails.  *See, e.g., Mahmood v. Bank of Am., N.A.*, No. 3:11–CV–3054–M–BK, 2012 WL 527902, at *4 (N.D. Tex. Jan. 18, 2012) ("Plaintiff's requests for injunctive relief from this Court to prevent a foreclosure sale make apparent that no foreclosure sale had occurred at the time this suit was brought.  Accordingly, Plaintiff's claim under Chapter 51 of the Texas Property Code for what could only be wrongful foreclosure should also be dismissed."); *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 454 (E.D. Tex. 2011) ("Plaintiff has not alleged an actual violation of the Texas Property Code because no foreclosure sale has occurred.  Perhaps Aurora had not adhered to all the notice requirements of § 51.002.  And perhaps if the property had been sold that sale could have been set aside.  But absent a sale, Plaintiff cannot state a claim under these sections of the Property Code."); *Caballero v. Wells Fargo Bank, N.A.*, No. 3–11–CV–1385–O–BD, 2011 WL 6039953, at *1 n.2 (N.D. Tex. July 25, 2011) ("To the extent plaintiff contends that defendant violated sections 51.002 and 51.0025(2) of the Texas Property Code by failing to issue proper notices in connection with the scheduled foreclosure sale of his property, those provisions apply only to the sale of real property pursuant to a power of sale.  Where, as here, no foreclosure sale has taken place, a plaintiff may not recover under those statutory provisions.").

The motion to dismiss the statutory claim is granted, with prejudice because amendment would be futile.

### F.    The Fraud and Negligent Misrepresentation Claims

"To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury."  *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465,

12

468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577

(Tex. 2001)).  In addition, fraud claims must comply with the particularity requirements of Rule

9(b).  Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." FED. R. CIV. P. 9(b).  "Put simply, Rule 9(b) requires the

who, what, when, where, and how to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co.

v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (internal quotation marks omitted).  The plaintiff

"must specify the statements contended to be fraudulent, identify the speaker, state when and where

the statements were made, and explain why the statements were fraudulent." *Southland Secs. Corp.

v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (internal quotation marks omitted).

"Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that

defendants possess fraudulent intent will not satisfy Rule 9(b)." *Melder v. Morris*, 27 F.3d 1097,

1102 (5th Cir. 1994).  "The plaintiffs must set forth specific facts supporting an inference of fraud."

*Id.*

"The elements of a negligent misrepresentation claim are: (1) a defendant, in the course of

its business or in a transaction in which it had a pecuniary interest, made a representation; (2) the

defendant supplied false information for the guidance of another in the other's business; (3) the

defendant did not exercise reasonable care or competence in obtaining or communicating the

information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the

representation." *Martin K. Eby Constr. Co. v. LAN/STV*, 350 S.W.3d 675, 688 (Tex. App.—Dallas

2011, pet. filed).  "Although Rule 9(b) by its terms does not apply to negligent misrepresentation

claims," the Fifth Circuit "has applied the heightened pleading requirements when the parties have

not urged a separate focus on the negligent misrepresentation claims." *Benchmark Elecs., Inc. v.*

*J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010).  "That is the case here, as [the Kews'] fraud and negligent misrepresentation claims are based on the same set of alleged facts." *Benchmark*, 343 F.3d at 723.

The Kews asserted their fraud and negligent misrepresentation claims in a single, three-sentence paragraph.  That paragraph states as follows:

> **Fraud/Intentional and/or negligent misrepresentation.**
> Defendants represented to Plaintiffs that the loan modification application was received and that it was being processed.  Plaintiffs relied on this false representation and stopped paying on the note as they were instructed.  No statements were sent afterwards.

(Pet. ¶ 20.)  These allegations do not satisfy Rule 9(b)'s particularity requirements.  Simply alleging that the defendants falsely represented to the Kews that their loan modification application was being processed—without additional factual allegations—does not identify the speaker nor the particular time and place of the false representations, and does not set forth "specific facts" supporting an inference of fraud.  *See Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 668 (5th Cir. 2004) (holding that similar fraud allegations did not satisfy Rule 9(b)). The motion to dismiss the fraud and negligent misrepresentation claims is granted.  The dismissal is without prejudice and with leave to amend.

**IV.   Conclusion**

The plaintiffs' motion to remand is denied.  The defendants' motion to dismiss is granted. The breach of the duty of good faith and fair dealing and the statutory claims are dismissed with prejudice based on futility of amendment.  The breach of contract, fraud, and negligent

misrepresentation claims are dismissed without prejudice and with leave to amend no later than **May 18, 2012**.

SIGNED on April 23, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge